**PRICE PFISTER, INC., Appellant,**

v.

**MOORE & KIMMEY, INC. d/b/a Toole & Co., Inc., Appellee.**

No. 14–99–01214–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 17, 2001.

Rehearing Overruled June 7, 2001.

Debora Beck Alsup, Austin, for appellants.

Kurt M. Hanson, Houston, Barbara H. Kramer, Rydal, PA, for appellees.

Panel consists of Justices ANDERSON, FOWLER, and EDELMAN.

### OPINION

ANDERSON, Justice.

This breach of contract case arises from an oral agreement whereby Moore & Kimmey, Inc. ("MKI")[1] agreed to serve as a wholesale sales representative for Price Pfister, Inc. in exchange for commissions on the sales of Price Pfister's products. After Price Pfister terminated the agreement, MKI sued to recover for commissions allegedly owed. Based on the jury's findings, the trial court entered judgment for MKI and awarded MKI treble damages under the Sales Representatives Act, TEX.BUS. & COM.CODE ANN. §§ 35.81–35.86 (Vernon 1987 & Supp.2001). Price Pfister raises four issues on appeal: (1) the trial court erred in applying the Sales Repre-

---

1. At some point while the agreement was in effect, Moore & Kimmey, Inc. merged with and began doing business as Toole & Co., Inc.

For convenience, we will refer to Moore & Kimmey both before and after the merger as "MKI."

sentatives Act to MKI's cause of action; (2) the evidence demonstrated as a matter of law that the parties' agreement had been modified and that Price Pfister did not breach the modified agreement; (3) the evidence was legally and factually insufficient to support the jury's findings regarding the substance of the parties' agreement; and (4) the damage award erroneously includes elements of damages for which there is no evidentiary support. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Price Pfister is a manufacturer of faucets and other plumbing supplies. In 1992, Price Pfister entered into an oral agreement with MKI under which MKI would serve as Price Pfister's wholesale sales representative for a defined territory in south Texas. Although the exact terms of MKI's compensation were disputed, the parties agreed that MKI would be paid a commission based on a percentage of MKI's sales of Price Pfister's products. At the time the agreement was made, the standard commission rate paid by Price Pfister was 5 percent for "core," or basic, products, and 6 percent for "decorative" products. However, the statements accompanying MKI's monthly commission checks indicate that MKI was actually paid different rates for different invoices submitted by MKI. These statements indicate that on most invoices, Price Pfister paid a commission of either 4 or 5 percent, while in a few cases, the commission paid was 1, 7½, or 8 percent.

In January 1994, at a national meeting of its sales representatives, Price Pfister announced that the commission rate on core products and parts would be reduced to 2½ percent, effective April 1. Immediately following that announcement, MKI's two co-owners, Tommy Moore and Gary Kimmey, voiced their objection to Price Pfis-

ter's then-vice president of sales, Rod Yamin. MKI expressed its belief that this new commission rate would be unfair, based on MKI's high percentage of sales in core products. According to Moore, Yamin told the co-owners that Price Pfister was familiar with MKI's situation and that Price Pfister would "correct it." Moore also testified that in the following two months, MKI asked Price Pfister about the status of the proposed commission change and was told that it "would not affect us."

By a memorandum dated March 29, 1994, addressed to "All Wholesale Agency Principals," Price Pfister announced that the company was "on target for converting to the new tiered rates effective April 1, 1994." Attached to this memo was a chart of Price Pfister's "Wholesale Commission Structure," which indicated a 2.5 percent rate for core products and a 5 percent rate for decorative. It is undisputed that MKI received a copy of this memo.

In May 1994, MKI began receiving commission statements from Price Pfister that reflected the new 2½ percent commission rate. Kimmey testified that he and Moore immediately called Price Pfister to protest. He and Moore both testified that up until the time MKI was terminated, they met several times with Price Pfister's regional sales manager, David Thames, and others at Price Pfister concerning their commission rate. MKI was told during these meetings that Price Pfister recognized the unfairness of MKI's situation and that it "would be rectified." Kimmey also testified that Thames told MKI that he "would get the commission back to 5 percent."

In the summer of 1996, during a national sales meeting in California, Moore requested a meeting with William Phillips, Price Pfister's new vice president of wholesale sales, at which he again expressed concern about the commission rate. Phil-

lips told Moore that he would get back to him. Four to six weeks later, Phillips informed Thames that there would be no change in the commission rate at that time. Thames conveyed Phillips's message to MKI, but Thames also told Moore and Kimmey that another Price Pfister employee was working on a proposal to change the commission rates.

In March 1997, Price Pfister informed MKI that it was terminating their agreement. MKI filed suit, alleging breach of contract and violation of the Sales Representatives Act. The jury found that (1) Price Pfister and MKI had agreed that Price Pfister would pay a 5 percent commission on sales of core products and 4 percent on parts, (2) Price Pfister did not give MKI unequivocal notice of a change in these commission rates, and (3) the difference between the commissions Price Pfister should have paid and the commissions it paid to MKI was $161,199.97. The trial court trebled MKI's damages under section 35.84 of the Sales Representatives Act and entered judgment for $483,599.91, plus prejudgment interest and attorneys' fees.

### CHALLENGES TO JURY'S FINDINGS

We begin by reviewing Price Pfister's challenges to the jury's findings. We will consider these challenges in the same order as the questions were presented in the charge.

### Standard of Review

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it does not have the burden of proof, that party must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). We consider all the evidence in the light most favorable to the jury's verdict, indulging every reasonable

inference in favor of the prevailing party. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998). A legal sufficiency point will be sustained when: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the record contains any evidence of probative force to support the jury's finding, the legal insufficiency challenge must be overruled. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

When the party raising a "no evidence" challenge has the burden of proof, that party must demonstrate that a contrary finding was established as a matter of law. *Croucher*, 660 S.W.2d at 58. The record must first be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition has been established as a matter of law. *Id.*

If any finding is challenged for factual sufficiency of the evidence, all the evidence in the record is reviewed. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We may reverse on the basis of factual insufficiency only if the jury's verdict is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). Additionally, in considering a com-

348

plaint regarding a jury's failure to find a fact, we "should be mindful that a jury was not convinced by a preponderance of the evidence." *Ramey v. Collagen Corp.*, 821 S.W.2d 208, 211 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (quoting *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988)).

### The 1992 Agreement

The jury found that the oral agreement between Price Pfister and MKI required Price Pfister to pay (1) a 5 percent commission on all core products, and (2) a 4 percent commission on all parts. In its third issue, Price Pfister contends that these two findings are erroneous as a matter of law and contrary to the great weight of the evidence.

With respect to the 5 percent commission on core products, both principals of MKI, Tommy Moore and Gary Kimmey, testified that their agreement with Price Pfister was for a 5 percent commission on core products. In contrast, none of Price Pfister's witnesses had any first-hand knowledge regarding the terms of the parties' original agreement. Moreover, MKI presented deposition testimony from David Thames, Price Pfister's regional sales manager, in which he stated that the initial commission rate with MKI was "5 percent on the core." The record contains considerable evidence to support the jury's finding.

Price Pfister nonetheless contends that the jury's finding of an agreement to pay a 5 percent commission on core products is against the great weight and preponderance of the evidence. At trial, Price Pfister presented evidence that the commission statements it sent to MKI indicated from the very beginning that MKI was actually being paid a variety of commission rates. Price Pfister's vice president of sales, William Phillips, testified that the applicable rate depended on the customer and the size of the order. Price Pfister asserts that its actual practice in paying commissions is evidence of what the parties' agreement was. However, we cannot say that this evidence clearly outweighs the evidence presented by MKI. The jury was entitled to assess the credibility of the witnesses and determine that Price Pfister in fact had agreed to a 5 percent commission, regardless of Price Pfister's subsequent conduct under the agreement. We overrule Price Pfister's legal and factual sufficiency challenges to the jury's finding of a 5 percent commission rate on core products.

Price Pfister next attacks the jury's finding of a 4 percent commission on parts. Both Moore and Kimmey testified that the initial agreement provided for a 5 percent commission on parts as well as core products. The only contrary evidence was testimony adduced during Moore's cross-examination, when he was asked to read MKI's interrogatory answer stating that MKI was to receive a 4 percent commission on parts under the parties' original agreement. Price Pfister argues that this testimony has no probative value, and therefore there is no evidence to support the jury's finding. We disagree.

Price Pfister first argues that Moore's testimony is legally insufficient because a party may not rely upon its own interrogatory answer as evidence. Civil Procedure Rule 197.3 states: "Answers to interrogatories may be used only against the responding party." However, this is not a situation where the interrogatory answer, standing alone, is being asserted as evidence. Moore testified during cross-examination that he wrote this interrogatory response, and that the answers to interrogatories had been prepared carefully and under oath. Under these circumstances, Moore's testimony does not violate

the Rule's prohibition against the use of answers to interrogatories. Accordingly, Moore's testimony provides some evidence to support the jury's finding that the parties agreed to a 4 percent commission on parts.

■ Price Pfister also contends that MKI is estopped from arguing that the commission rate on parts was 4 percent because MKI's counsel judicially admitted that this interrogatory response was a typographical error. During closing argument, MKI's attorney made the following statement:

> And there is a question in some interrogatories that we admittedly answered, we suggested that it was—we being my client. Moore & Kimmey—suggested it was four percent. And that was a typographical error.

However, shortly after making this statement, MKI's attorney stated (emphasis added), "So, to admit it was in fact a promise to pay a five percent commission, *but if it's not, then it was a four percent* and that's the next question." A judicial admission must be a clear, deliberate, and unequivocal statement. *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex.1996) (per curiam). Because the statement made by MKI's attorney was, at best, equivocal, it cannot constitute a judicial admission. *See Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 740 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (finding that an attorney's statements during voir dire and closing argument were equivocal, and therefore not judicial admissions, when viewed alongside other statements made during the attorney's presentation).

■ Price Pfister also challenges the factual sufficiency of the evidence supporting the jury's finding of a 4 percent commission on parts. In reviewing the factual sufficiency of the evidence in support of a jury finding, however, we may reverse only if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be "manifestly unjust." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Although the evidence supporting a 4 percent commission on parts is slight, Price Pfister admits that there is considerable evidence in the record that the agreed commission rate on parts was 5 percent. Because the evidence was factually sufficient to support a finding that would have been *less* favorable to Price Pfister, we conclude that the jury's finding did not result in a verdict that was "manifestly unjust." Price Pfister's legal and factual sufficiency challenges to the finding that the parties agreed to a 4 percent commission rate on parts are overruled.

We find the evidence is both legally and factually sufficient to support the jury's findings regarding the commission rates in the parties' agreement. Price Pfister's third issue is overruled.

### Modification

■ In its second issue, Price Pfister claims that, notwithstanding the terms of the original oral agreement, it did not breach the agreement because the parties modified the commission rates. As the party alleging that the agreement was modified, Price Pfister bears the burden of proof on this issue. *See Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986).[2] The party asserting a modification

---

**2.** Although *Hathaway* specifically deals with an at-will employment contract, we will accept as true both parties' assertion that its analysis should be applied to the parties' agreement in this case. We express no opinion, however, whether *Hathaway* governs oral

must prove two things: (1) notice of the change, and (2) acceptance of the change. *Id.* MKI concedes that if adequate notice was given, its continued performance under the agreement would have constituted acceptance. Thus, the only question is whether Price Pfister proved that it gave sufficient notice of a change to the agreement.

■ Under *Hathaway*, to establish notice, Price Pfister must prove that it unequivocally notified MKI of a definite change in the terms of the parties' agreement. *Id.* Price Pfister must show that MKI had knowledge of the proposed modification, which requires proof that MKI knew both the nature of the change and the certainty of its imposition. *Id.* The jury was asked whether Price Pfister gave MKI unequivocal notification of a change in commission rates, to which they answered "No." We may reverse this finding only if Price Pfister conclusively established that it gave unequivocal notice as a matter of law, or if the jury's failure to find unequivocal notice was contrary to the great weight and preponderance of the evidence. *See Croucher*, 660 S.W.2d at 58.

■ Price Pfister first argues that the commission statements it sent to MKI provided unequivocal notice of a modification to the allegedly agreed commission rate of 5 percent for core products. At best, however, these statements establish that Price Pfister was paying commissions at a different rate than that to which MKI and Price Pfister had originally agreed.

Price Pfister fails to show how the statements gave unequivocal notice to MKI of a definite change in the terms of their agreement and that all future commissions would be paid at these different rates. Furthermore, both Moore and Kimmey testified that they did not review the commission statements in detail, and thus did not know that Price Pfister's actual payments were based on different commission rates. Because this testimony constitutes some evidence supporting the jury's "no" answer regarding unequivocal modification, Price Pfister's legal sufficiency challenge fails. *See Sterner*, 767 S.W.2d at 690.[3]

■ We likewise overrule Price Pfister's challenge to the factual sufficiency of the evidence. Price Pfister relies heavily on testimony from Moore that Price Pfister "deducted sometimes these preferred discounts" for large-volume customers to argue that MKI was aware that the actual commission rates varied, and therefore were no longer as originally agreed. However, this testimony falls short of establishing by the overwhelming weight and preponderance of the evidence that the commission statements provided unequivocal notice to MKI of a change in the previously-agreed commission rates.

■ Price Pfister argues more persuasively that its 1994 announcement and implementation of a nation-wide change to a 2½ percent commission on core products and parts constituted unequivocal notice of a modification. Notwithstanding Moore's

agreements outside the context of at-will employment.

**3.** At least one appellate court has held that when an employer establishes the employee's actual receipt of a document that "explicitly and plainly" explains a new employment policy, the employee's claim that he did not read or understand the policy is insufficient to negate a finding that the employer gave un-

equivocal notice of a change. *Burlington N. R.R. Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex. App.—Fort Worth 1996, no writ). Unlike the document found to constitute notice in *Akpan*, however, the commission statements relied on by Price Pfister do not "explicitly and plainly" indicate an intent to change the parties' original agreement regarding commission rates.

testimony that in the two months following this announcement, both he and Kimmey were repeatedly told that the proposed commission change "would not affect [MKI]," Price Pfister argues that it gave unequivocal notice on at least four occasions that this new rate would be applied to MKI:

(1) the March 29, 1994 memorandum addressed to "All Wholesale Agency Principals";

(2) conversations in April 1994 during which Thames stated to Moore and Kimmey "that when the reduced commission went into effect and it proved to be unfair to [MKI], that [Thames] would fight for [MKI]'s interest";

(3) MKI's monthly commission statements, starting in May 1994, reflecting payment of the new 2½ percent commission rate; and

(4) Thames's conversation with Moore in 1996 in which he conveyed Phillips's statement that Price Pfister would not be changing the commission rate at that time.

In response, MKI asserts that both the March 29 memorandum (which was addressed generically to all sales representatives) and the April 1994 conversations must be examined in the context of Price Pfister's earlier statements. In addition to Moore's testimony that he was specifically told that the proposed commission rate change "would not affect us," Moore also testified that immediately following the January 1994 announcement, Price Pfister's representatives told him and Kimmey that "we're familiar with your situation and we will correct it."

Furthermore, the record contains considerable evidence of statements made by Price Pfister from which the jury might have concluded that any notice given by Price Pfister was equivocal. Kimmey testified that up until the time the agreement was terminated, he and Moore continued to meet with Thames and others at Price Pfister concerning the commission change and were told "that the situation would be rectified." Kimmey also testified that Thames told MKI "that he would get the commission back to 5 percent." Perhaps most significantly, Thames admitted during cross-examination that Price Pfister never expressly told MKI that the 2½ percent commission rate was a "done deal":

Q: In the whole time from the announcement of the reduction in commissions until Moore & Kimmey was terminated three years later, roughly three years later as a Price Pfister representative, did you ever tell Moore & Kimmey, You're terminated unless you accept the 2½ percent?

A: No, sir, I did not.

. . . .

Q: Okay. And you were the con—the real contact, the day-to-day contact between Moore & Kimmey and Price Pfister, were you not?

A: Yes, sir.

Q: And you never said to Moore & Kimmey, 2½ percent on core products, take it or leave it, done deal?

A: No, sir, I did not.

Even during the conversation in the summer of 1996 when Thames allegedly conveyed the message from Phillips that Price Pfister would not be changing the commission rate, Thames admits that he also told MKI that Price Pfister's national sales manager was doing research on commissions and would be making a presentation to Phillips. Price Pfister never clearly established that MKI knew the *certainty of the imposition* of Price Pfister's proposed modification, a necessary component for proving MKI's knowledge, and thus,

delivery of unequivocal notice under *Hathaway.* 711 S.W.2d at 229. Based upon our review of the record, we conclude the jury's failure to find that Price Pfister gave unequivocal notice was not so contrary to the great weight of the evidence as to be clearly wrong and manifestly unjust. We overrule Price Pfister's second issue.

### Damages

In its fourth issue, Price Pfister raises several challenges to the jury's finding that MKI should be awarded $161,199.97 for the difference between the commissions Price Pfister should have paid and the commissions it paid to MKI. Price Pfister first argues that the damage award is erroneous because the parties' agreement had been modified, and because a portion of the damages is based on the jury's finding of an agreed 4 percent commission on parts. Because we find no error in the jury's predicate findings, we reject this argument.

Price Pfister next contends that the damage award must be disregarded because it is based on speculation. MKI's damage expert, James Wiggins, testified that MKI's damages, based on the difference between a 5 percent commission rate on all products (including parts) and a 2½ percent rate, were $173,199.97. Price Pfister does not dispute this testimony, but rather complains that there was no evidence from which the jury could calculate damages based on a 4 percent commission rate on parts. Kimmey testified that his "best estimate" was that parts comprised, at most, ten percent of MKI's sales of Price Pfister products. Based on the assumption that ten percent of MKI's sales were parts, Wiggins testified that MKI's damages should be reduced by $10,500. The jury awarded $161,199.97, or $12,000 less than the amount Wiggins suggested.

Price Pfister contends that because Kimmey's testimony that parts comprised ten percent of MKI's sales was a "guess," it cannot support the jury's verdict, citing *Malone v. E.I. du Pont de Nemours & Co.,* 8 S.W.3d 710, 716 (Tex. App.—Fort Worth 1999, pet. denied). In *Malone,* the plaintiff's only testimony as to his damages on a product-defect DTPA claim was based on an estimate that was "pulled out of the air" and "purely a guess." The court held that this speculative testimony was no evidence of damages and therefore did not raise a fact issue precluding summary judgment. *Id.* Unlike the plaintiff's testimony in *Malone,* however, Kimmey's testimony is not the sole basis for the jury's finding, but rather is simply a basis for MKI's expert to calculate a decrease in the damage award. The jury has discretion to award damages within the range of evidence presented at trial. *City of Houston v. Harris County Outdoor Adver. Ass'n,* 879 S.W.2d 322, 334 (Tex.App.—Houston [14th Dist.] 1994, writ denied). We find that the jury's award was well within the range of evidence.

Lastly, Price Pfister argues that the jury's damage award fails to take into account the fact that the change of commission rates conferred a benefit on MKI. Price Pfister contends that MKI received a benefit from Price Pfister's 1994 change in commission rates because the evidence showed MKI had previously been paid a 1 percent commission on some invoices. However, the jury was asked to determine the difference between the commissions Price Pfister agreed to pay in 1992 and the commissions it actually paid. Because the jury found that Price Pfister agreed to pay commissions at a rate of 4 or 5 percent, evidence suggesting that Price Pfister paid some invoices at a 1 percent rate would result in a greater damage award. Thus, Price Pfister has not shown that it was

harmed by the jury's alleged failure to consider that it paid some commissions at a rate of 1 percent. Price Pfister's fourth issue is overruled.

## APPLICATION OF THE SALES REPRESENTATIVES ACT

Finding no error in the jury's findings, we now turn to Price Pfister's first issue that the trial court erred by trebling the jury's damage award pursuant to the Sales Representatives Act (the "Act"). The Act provides that a contract between a "principal" and a "sales representative" involving the solicitation of wholesale orders in Texas must be in writing and set forth the method for computing and paying commissions. TEX.BUS. & COM.CODE ANN. § 35.82 (Vernon Supp.2001). Section 35.83 states:

> If a compensation agreement between a sales representative and a principal that does not comply with Section 35.82 is terminated, the principal shall pay all commissions due the sales representative within thirty working days after the date of the termination.

Finally, section 35.84 provides: "A principal who ... fails to pay a commission as required by Section 35.83 is liable to the sales representative in a civil action for three times the unpaid commission sustained by the sales representative...."

Price Pfister and MKI entered into their agreement in 1992. At that time, the Act's definition of "principal" included only those persons who did not have a permanent or fixed place of business in Texas.[1] Because

Price Pfister had an office in Texas, it was not subject to the Act in 1992. In 1995, however, the Act was amended to remove this restriction on a principal's place of business. It is undisputed that under the current version of the Act, Price Pfister and MKI satisfy the definitions of "principal" and "sales representative," respectively.

■ Price Pfister argues that the trial court's application of the Act[5] to its agreement with MKI violates the prohibitions against retroactive laws, ex post facto laws, and laws impairing the obligation of contracts found in both the Texas and United States Constitutions.[6] The ultimate question of whether a statute or regulation violates the constitution is a question of law. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932 (Tex. 1998). Although this determination occasionally requires the consideration of a number of factual issues, *see id.*, in this case the relevant underlying facts are undisputed.

## Retroactive Law

■ Price Pfister first argues that application of the Act in this case would violate the Texas Constitution's restriction against retroactive laws. To establish that the Act is a retroactive law prohibited by the Texas Constitution, Price Pfister must show that the application of the Act "would take away or impair vested rights acquired under existing law." *McCain v. Yost*, 155

---

**4.** Act of May 31, 1987, 70th Leg., R.S., ch. 318, § 1, 1987 Tex. Gen. Laws 1717, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 714, § 1, 1995 Tex. Gen. Laws 3754.

**5.** Price Pfister does not allege the Act is unconstitutional on its face, but rather asserts that the Act is unconstitutional as applied to Price Pfister's agreement with MKI.

**6.** Article I, section 16 of the Texas Constitution provides:

> No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

Article I, Section 10 of the United States Constitution states, in pertinent part:

> No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts....

Tex. 174, 284 S.W.2d 898, 900 (1955). Price Pfister argues that the original terms of a contract incorporate the relevant law at the time the contract is made. *See Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 626 (Tex.1987). Thus, Price Pfister contends that the 1992 agreement vested it with the following rights: (1) the right to base a contract upon a handshake rather than a writing, and (2) the right to make commission payments by some timetable other than thirty days after termination.

With respect to the first of these "rights," application of the Act does not invalidate or otherwise impair any oral agreements Price Pfister may have entered into with its sales representatives. Although section 35.82 of the Act states that such contracts "must" be in writing, section 35.83 clearly contemplates the continuing existence and validity of compensation agreements that do not comply with section 35.82. *See Metromarketing Servs., Inc. v. HTT Headwear, Ltd.,* 15 S.W.3d 190, 194 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

Price Pfister also argues that under the law as it existed when the agreement was made, Price Pfister acquired a vested right to terminate the agreement without having to pay commissions due to MKI within thirty days after termination. However, the Texas Supreme Court has stated:

> Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right; and for this reason it has been constantly held that, until the right becomes fixed or vested, it is lawful for the lawmaking power to declare that the given state of facts shall not fix it, and such

laws have been constantly held not to be retroactive in the sense in which that term is used.

*Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 253 (1887). The "state of facts" that would give Price Pfister its purported right to pay commissions more than thirty days after termination did not come into existence until 1997, when Price Pfister terminated the agreement. Accordingly, because Price Pfister's "right" was not fixed or vested until that time, a legislative act that altered this right was not unconstitutionally retroactive. *See id.*

Price Pfister further claims it has a right to be subjected only to the remedies for breach of contract that existed in 1992, when the agreement was made. It is settled law in Texas that a litigant has no vested right in a particular remedy, and that a remedial statute is valid and controls litigation from the date it takes effect. *Phil H. Pierce Co. v. Watkins,* 114 Tex. 153, 263 S.W. 905, 907 (1924). In the absence of a contrary provision in the agreement, Price Pfister had no vested right to a particular measure of damages when the facts giving rise to MKI's claim for damages did not yet exist. *Cf. Pratt v. Story,* 530 S.W.2d 325, 329 (Tex.Civ.App.—Tyler 1975, no writ) (holding that a statute enacting a new notice procedure to be followed for enforcement of a forfeiture was not unconstitutional as applied to a contract executed before the statute's enactment when it did not violate any express provision in the contract).

Price Pfister argues that the Act is not remedial, but rather alters substantive rights under the agreement. A similar argument was rejected by the El Paso Court of Appeals in *Rey v. Acosta,* 860 S.W.2d 654 (Tex.App.—El Paso 1993, no writ). In *Rey,* the parties executed a real estate lien note in 1985 that contained a

provision expressly waiving the debtors' right to receive any notice of intent to accelerate the note. In 1987, however, the Texas Property Code was amended to require that for real estate notes like the one at issue in *Rey,* a debtor must be given twenty days notice before the debt is accelerated. In 1988, the holder of the note attempted to accelerate the note without providing twenty days notice. Reversing a judgment against the debtors, the appellate court held that the amended statute applied, despite the fact that the note was executed before the amendment's effective date. *Id.* at 657.

The note holder argued that the amended statute could not be retroactively applied to the parties' 1985 note. The appellate court disagreed, noting that the statute did not abolish the note holder's right to accelerate the note, but simply required a twenty-day grace period before acceleration. Thus, the court concluded that the statute was remedial, as it did not alter any substantive rights, and applying it retroactively did not violate the Texas Constitution. *Id.* at 658. Similarly, section 35.83 of the Act does not alter Price Pfister's obligation to pay commissions that it owes MKI under the parties' agreement; it simply requires that those commissions be paid within thirty days of the date the agreement is terminated. We find that the trial court's application of sections 35.83 and 35.84 of the Act in this case does not violate the restriction against retroactive laws in the Texas Constitution.

### Ex Post Facto Law

■■ Price Pfister argues that application of the Act to MKI's claims is unconstitutional as an ex post facto law. The prohibition against ex post facto laws applies only to criminal or penal laws. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 633 (Tex.1996). Price Pfister argues that treble damages are penal in nature, and therefore subject to this prohibition. While we have found no cases applying an ex post facto analysis to a statute providing for treble damages, the Texas Supreme Court has considered a constitutional due process challenge to the treble damages provision of the DTPA, expressly noting that the argument was "based on the premise that treble damages under [the DTPA] make the causes of action granted by [the DTPA] penal in nature." *Pennington v. Singleton,* 606 S.W.2d 682, 688 (Tex.1980). For purposes of our analysis, we will assume, without deciding, that the Act is subject to scrutiny under the constitutional prohibition against ex post facto laws.

■ A law violates the ex post facto provisions of the Texas and United States Constitutions if it (1) punishes as a crime an act previously committed, which was innocent when done; (2) inflicts greater punishment than was allowed by law at the time the act was committed; or (3) deprives one charged with a crime of any defense available when the act was committed. *Lopez v. State,* 928 S.W.2d 528, 534 (Tex.Crim.App.1996). The only "crime" that the Act punishes in this case (or, alternatively, inflicts greater punishment for) is Price Pfister's failure to pay all commissions due to MKI within thirty days after termination.[7] Because Price Pfister's act undeniably was not "committed" until well after the Act was in effect,

---

7. Treble damages are also available under the Act for a principal's failure to comply with a provision in a written contract relating to payment of a commission. Tex.Bus. & Com. Code Ann. § 35.84 (Vernon Supp.2001). Because the parties' agreement was not in writing, this provision does not apply.

the trial court's application of the statute does not violate the prohibition against ex post facto laws.

### Impairment of Contractual Obligations

■■■■■ Finally, Price Pfister argues that the court's application of the Act violates both the Texas and United States Constitutions because it impairs the obligations of a contract that was created before enactment of the statute. The obligation of a contract is defined as "the law which binds the parties to perform their agreement." *Langever v. Miller*, 124 Tex. 80, 76 S.W.2d 1025, 1031 (1934) (quoting *Walker v. Whitehead*, 83 U.S. (16 Wall.) 314, 317, 21 L.Ed. 357 (1872)). An obligation is impaired when a statute is enacted that releases a part of this obligation or to any extent or degree amounts to a material change or modifies it. *See Cardenas v. State*, 683 S.W.2d 128, 131 (Tex. App.—San Antonio 1984, no writ). Here, Price Pfister's underlying obligation—payment of commissions due to MKI—was not changed by application of the Act. Price Pfister argues that *the obligations of the parties' agreement include the relevant law in force at the time the agreement was made*, which included the right to wait more than 30 days after termination before paying commissions due. As discussed above, this "right" did not vest before Price Pfister terminated the contract in 1997. Thus, no previously-existing obligation was impaired by the Act's application.

■■■■■ Alternatively, the Act may be viewed as having altered the remedy for Price Pfister's breach of its contractual obligation. However, "[i]n order for an existing or specific remedy to be an obligation of the contract, it must have been contracted for and agreed to by the parties in the contract itself." *Beaumont Petroleum Syndicate v. Broussard*, 64 S.W.2d 993, 997 (Tex.Civ.App.—Beaumont 1933), *appeal dismissed as moot sub nom. Plainview Bldg. & Loan Ass'n v. Robbins*, 123 Tex. 408, 73 S.W.2d 92 (1934). The Texas Supreme Court has held that the distinction is clearly drawn between legislative acts that impermissibly impair the obligations of contracts and those in cases where "a contract prescribes no method for its enforcement, and resort to the courts must be had to enforce the rights arising thereunder." *Sharber v. Florence*, 131 Tex. 341, 115 S.W.2d 604, 606 (1938). Under the latter circumstances, "the Legislature may prescribe rules regulating the enforcement of such rights." *Id.* We conclude that the trial court's application of the Act in this case did not impair any obligation of the parties' contract.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.