**AFFIRM; and Opinion Filed February 13, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01562-CV

**QUICK CHANGE ARTIST, LLC, Appellant**
**V.**
**IRIS T. ACCESSORIES, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-14118**

## MEMORANDUM OPINION

Before Justices Francis, Stoddart, and Schenck
Opinion by Justice Schenck

Quick Change Artist, LLC ("QCA") appeals a judgment in favor of Iris T. Accessories ("Iris") awarding Iris $245,628 on its suit against Onesole by Quick Change Artist, LLC for failure to pay commissions on the sale of QCA products. On appeal, QCA argues the trial court lacked subject-matter jurisdiction over the case and abused its discretion in awarding damages and sanctions, and in denying various post-judgment motions. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### FACTUAL & PROCEDURAL BACKGROUND

QCA, under the trade name Onesole, manufactures women's shoes and accessories. More particularly, QCA manufactures various shoe sole styles to which numerous tops can be

fastened, allowing women to purchase more than one look for a single shoe sole. QCA is headquartered in Florida.

Iris is a sole proprietorship owned by Iris Topletz and acts as a manufacturer's representative. Topletz has a showroom at the Dallas World Trade Center where she displays and sells various manufacturers' products.

In February 2006, Topletz met Dominique Barteet, the owner of QCA, at a trade show in Las Vegas, Nevada and began selling the Onesole shoes and accessories pursuant to an oral commission agreement, the existence and enforceability of which is uncontested on appeal. Until the year 2009, QCA paid Topletz a commission of fifteen percent on all sales to customers she procured, including initial orders, reorders, and orders placed directly with QCA, with the exception of one customer who QCA introduced to Topletz at a trade show. On that account, QCA paid Topletz a ten, rather than fifteen, percent commission.

In 2009, without Topletz's approval, QCA stopped paying commissions on orders it received directly from Iris's customers though it continued processing the orders.[1] Iris sued QCA for breach of contract, quantum meruit, and fraud. QCA filed a counterclaim for declaratory judgment seeking an order requiring Iris to return or pay for any QCA merchandise in its possession.

After a bench trial, the trial court ruled in favor of Iris on its breach of contract claim and against QCA on its counterclaim. QCA filed a motion for new trial; a motion to vacate, modify, correct, or reform the judgment; and a motion for reconsideration or rehearing. The trial court denied the motions, and QCA perfected this appeal.

---

[1] In doing so, QCA changed the accounting for orders from customers Iris procured. Instead of being listed as Iris's accounts they were listed as QCA house accounts.

DISCUSSION

I.        Proper Parties

In its first issue, QCA argues the trial court lacked subject-matter jurisdiction because QCA was improperly named in the lawsuit.  Although it is not entirely clear from the record or the briefing, it appears QCA contends Iris should have sued Quick Change Artist, LLC, not Onesole by Quick Change Artist, LLC and, thus, lacked standing to maintain the suit.  But the issue raised by the difference in names is one of misnomer, not standing.  When a person or entity intended to be sued is properly served with a petition that uses a wrong name, and fails thereafter to plead such misnomer in abatement, the defendant is bound by the resulting judgment.  *Adams v. Consolidated Underwriters*, 124 S.W.2d 840, 841 (Tex. 1939).

The record before this Court shows QCA appeared and fully participated in this case and did not plead a misnomer at any time in the trial court until after it suffered an adverse judgment.  Therefore, it waived the misnomer.  *See Butler v. Express Pub. Co.*, 126 S.W.2d 713, 715 (Tex. Civ. App.—San Antonio 1938, writ ref'd.).  We overrule QCA's first issue.

In its second issue, QCA argues the judgment in favor of Iris must be reversed on standing grounds because QCA made the commission payments to Topletz, individually, not to her company, which is the named plaintiff.  Whether a party is entitled to sue on a contract is not truly a standing issue because it does not affect the jurisdiction of the court.  *Transcon. Realty Investors, Inc. v. Wicks,* 442 S.W.3d 676, 679 (Tex. App.—Dallas 2014, pet. denied).  Rather, it is a decision on the merits.  *Id.*  As such, it is an issue of capacity, not standing, and the question presented is whether Iris had the legal authority to sue to collect the commissions.

The record establishes that Iris is a sole proprietorship owned by Iris Topletz.  A sole proprietorship is not a legal entity separate and distinct from the individual owner doing business in that name.  *CU Lloyd's of Tex. v. Hatfield*, 126 S.W.3d 679, 685 (Tex. App.—Houston [14th

Dist.] 2004, pet. denied). Therefore, whether the suit was brought under the name Iris or Topletz is of no import to the judgment. *See e.g., Dakil v. Lege*, 408 S.W.3d 9, 11 (Tex. App.—El Paso 2012, no pet.). Moreover, the record shows QCA failed to file a verified denial of Topletz's capacity to sue pursuant to Rule 93(1). Without such an objection, Topletz's capacity to recover is deemed admitted. TEX. R. CIV. P. 93(1); *King-Mays v. Nationwide Mut. Ins. Co.*, 194 S.W.3d 143, 145 (Tex. App.—Dallas 2006, pet. denied). Accordingly, we overrule QCA's second issue.

II.     Sufficiency of the Evidence

In its third issue, QCA argues the evidence is legally and factually insufficient to support the damages awarded to Iris and claims the trial court erred by not awarding damages to QCA. In challenging the award of damages to Iris, QCA urges that Iris was not entitled to recover damages pursuant to the Sales Representative Act on an oral contract and Iris did not present the best evidence of damages.

A.     Standard of Review

In reviewing a trial court's findings of fact for legal and factual sufficiency of the evidence, we apply the same standards we apply in reviewing the evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

1.     Legal Sufficiency

In conducting a legal-sufficiency review, we view the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). We may sustain a legal-sufficiency, or no-evidence, point if the record reveals one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite

–4–

of the vital fact. *See Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). If more than a scintilla of evidence exists, it is legally sufficient. *Lee Lewis Constr.*, 70 S.W.3d at 782. More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Id.* at 782–83.

### 2. Factual Sufficiency

In reviewing a factual-sufficiency point, we must weigh all of the evidence in the record. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex. 1980). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### B. Damages Pursuant to Section 54.003 of the Sales Representative Act

QCA appears to argue because there is no evidence of a written contract stating a commission percentage rate, Iris is not entitled to damages under the Sales Representative Act (the "Act"). The Act allows a sales representative to recover three times the unpaid commissions due under certain circumstances. TEX. BUS. & COM. CODE ANN. § 54.004 (West 2015). While Iris requested treble damages under the Act, she did not receive them. Rather, she recovered lost profits due to QCA's breach of an oral agreement, whose existence is undisputed. As a result, we need not reach QCA's argument concerning the effect of the Act.[2]

---

[2] We note that a Houston court of appeals upheld an award of treble damages under the Act on an oral commission agreement. *See Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). That case involved sections 35.82, 35.83, and 35.84 of the Act, now sections 54.002, 54.003, and 54.004. In that case, the court stated "Although section 35.82 of the Act states that such contracts 'must' be in writing, section 35.83 clearly contemplates the continuing existence and validity of compensation agreements that do not comply with section 35.82." *Id.* Section 35.82, like section 54.003, provided, "[i]f a compensation agreement between a sales representative and a principal that does not comply with 35.82 is terminated, the principal shall pay all commissions due the sales representative within thirty working days after the date of the termination." In this case, we need not decide whether the Act applies to oral agreements because Iris did not recover under the Act.

C.      Terms of the Agreement

At trial, Topletz established, and QCA's owner, Barteet, acknowledged that QCA agreed to pay Topletz a fifteen-percent commission on all sales, excepting one customer. The only dispute was over whether the commission would be paid on orders placed directly with the company, rather than through Iris. Iris offered expert testimony establishing payment on all orders, including direct orders, was consistent with the industry custom and practice of the parties. In addition, the documents admitted into evidence establish QCA actually paid Topletz a commission on all orders, including reorders or direct orders, for approximately three years. While Barteet and another witness for QCA testified that a store must continuously be serviced to receive a commission, the trial court acting as the trier of fact was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Henry S. Miller Residential Serv. Corp. v. Arthur*, 671 S.W.2d 670, 671 (Tex. App.—Dallas 1984, no writ). In this case, the trial court found the testimony of Iris to be more credible than the testimony of QCA. Thus, the trial court found QCA agreed to pay Iris a fifteen-percent commission on all orders by customers procured by Iris, including reorders or direct orders from the customer to QCA and that finding is supported by the evidence.

D.      Damages Awarded

There is no dispute over the fact that QCA stopped paying Iris commissions in 2009 on direct orders from customers Iris procured. As to the proper calculation of damages, QCA claims that its own Quick Books file contained the best evidence from which damages could be calculated and that Iris's failure to use that information to calculate damages precludes recovery of any damages in this case. The record shows it took two motions to compel and court intervention before QCA even attempted to provide Iris access to its Quick Books file, and even

then Iris was not able to access the information due to a software issue.[3] As a result of not being able to access QCA's Quick Books file, Iris presented alternative damages models, including one based upon the history of sales and commissions from 2006 through 2008.

Generally, the measure of damages for breach of a contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied). This measure may include reasonably certain lost profits, which in this case would be the commissions Iris would have received on sales to its customers but for the breach of contract. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

Proof of lost profits damages does not necessarily require proof that the loss is susceptible to exact calculation. *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994). The injured party must show the amount of the loss by competent evidence with reasonable certainty. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010). "What constitutes reasonably certain evidence of lost profits is a fact intensive determination." *Holt Atherton*, 835 S.W.2d at 84. "At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained." *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994). Proof of lost damages can be accomplished with evidence of profit history. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001).

In this case, Iris introduced evidence that it earned commissions from sales of QCA's products of $87,676.23 in 2006, $163,517.49 in 2007, and $116,779.71 in 2008. In the year 2006, Iris sold QCA's product for ten months out of the year. So on average QCA paid Topletz

---

[3] While QCA claims that Iris's counsel falsely told the trial court that he had not been provided a password to access QCA's Quick Books file, it appears from the record that Iris's counsel did not realize that he had been provided a password in an email because he and his firm never got to that step in the process because they could not open the link to the Quick Books file. In any event, QCA has not shown that the trial court was obliged to accept its version of events and the conflict is not material to our disposition.

commissions of $128,503 per year. This evidence supports the trial court's findings concerning the historical payment of commissions and calculation of the annual average.

The trial court found the evidence to support a reasonable estimate that but for QCA's conduct, Iris would have realized its previous yearly average commission earnings from QCA in 2009, 2010, and 2011. QCA argues this finding ignores Topletz's testimony during her deposition that she removed QCA product from her showroom in 2010 and thus the trial court erred in awarding damages for commissions for the year 2011. At trial, however, Topletz testified she removed QCA's product from her showroom in 2011 and that during her deposition she incorrectly recalled that it was in 2010.[4] Thus, the evidence is sufficient to support an award of damages through 2011.

III.    Offset and Payment for Merchandise

Next, QCA argues the trial court erred by failing to offset overpayments to Topletz. But QCA did not plead or prove offset in the trial court. The right of offset is an affirmative defense, and the burden of pleading offset and of proving facts necessary to support it are on the party making the assertion. *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). In addition, the trial court found QCA's testimony concerning overpayments not to be credible. Consequently, QCA was not entitled to an offset.

QCA also claims the trial court erred by not awarding it the value of samples retained by Iris as requested in its counterclaim for declaratory judgment. But the evidence establishes there were no demands for the return of unused samples and that the single shoe samples were

---

[4] QCA also claims Iris is not entitled to recover damages because there was contradictory evidence of the identity of Iris Topletz's accounts because Iris's list of customers it procured included Grand Glitz, and at trial Iris Topletz could no long attest to it being a store she procured, and two stores that appeared on Iris's list at trial did not appear on a list that was attached to Iris's response to QCA's special appearance. The damage calculations were made based upon historical commissions paid. Thus, whether a store was listed improperly on a separate client spreadsheet is of no significance. The list of stores would only have been relevant to the damage model if Iris had the Quick Books information and sought to link post-conversion sales to the stores it claimed to have procured.

essentially valueless. Consequently, the evidence supports the trial court's denial of QCA's counterclaim.

IV. Attorney's Fees and Sanctions

QCA challenges the sufficiency of the evidence to support the trial court's award of a total of $80,000 in attorney's fees. Generally, we review a trial court's decision to award attorney's fees for an abuse of discretion. *Sharifi v. Steen Automotive, LLC*, 370 S.W.3d 126, 152 (Tex. App.—Dallas 2012, no pet.)(citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to guiding principles." *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). We review a trial court's determination respecting the amount of attorney's fees for legal and factual sufficiency of the evidence. *See Bocquet*, 972 S.W.2d at 21; *Brockie v. Webb*, 244 S.W.3d 905, 909–10 (Tex. App.—Dallas 2008, pet. denied); *see also Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996) (evidence must constitute "more than a scintilla" to be legally sufficient); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (in reviewing factual sufficiency of evidence, we consider and weigh all evidence and set aside judgment only if it is so contrary to overwhelming weight of evidence as to be clearly wrong and unjust).

In support of its claim for attorney's fees, Iris presented the testimony of one of its attorneys. He testified that Iris agreed to pay its lawyers a contingency fee of forty percent of the damages collected, that Iris's attorneys' usual hourly rates are $350 for senior attorney time and $300 for junior attorney time, and that as of the start of trial Iris's attorneys had itemized billings of $49,333, with additional time during trial. Iris's attorney further opined that an award of forty percent of the damages awarded in this case is a reasonable and necessary attorney's fee award. QCA did not object to the testimony, did not cross examine the witness, and did not present any controverting evidence.

The trial court determined that Iris should be awarded $50,000 through trial of this case, and that, due to the contingent nature of the engagement, rather than awarding forty percent of the damages, the trial court would apply a 1.5 times enhancement bringing the total for attorney's fees awarded to $75,000, yielding considerably less than the agreed to contingency amount. The trial court then took into consideration that QCA had not yet paid sanctions it was ordered to pay in the total amount of $5,000,[5] yielding a total of $80,000 in attorney's fees. The evidence is sufficient to support this award.

QCA urges this Court to reverse one of the trial court's pre-trial award of $2,500 in attorney's fees to Iris as sanctions, arguing the fees should not have been awarded because its owner was willing to appear for a deposition in Florida and to produce documents there and because there was no evidence to support the amount awarded.

A trial court may award attorney's fees on a party's abuse of the discovery process. TEX. R. CIV. P. 215.2(b)(8). The discovery sanctions imposed by a trial court are within that court's discretion and will be set aside only if the court clearly abused its discretion. *Hernandez v. Hernandez*, No. 05-13-01219-CV, 2014 WL 5337988, at *2 (Tex. App.—Dallas Oct. 20, 2014, no pet.)(mem.op.)(citing *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986)).

The trial court awarded Iris the fees because QCA failed to comply with an earlier order of the court to respond to outstanding discovery by May 14, 2014, and failed to appear for a timely and properly noticed deposition of Barteet in Dallas, Texas. Thus, the trial court did not abuse its discretion in sanctioning QCA.

As to the amount of attorney's fees awarded, the supreme court has held that the amount of attorney's fees awarded as sanctions for discovery abuse is solely within the sound discretion

---

[5] On two occasions the trial court sanctioned QCA and ordered it to pay Iris $2,500. QCA does not challenge one of the orders here or deny its failure to pay them during the course of the proceedings in the trial court.

of the trial judge and will only be set aside upon a showing of clear abuse of discretion. *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984) (per curiam). Further, proof of attorney's fees expended or the reasonableness thereof is not required when such fees are assessed as sanctions. *See id*. We conclude the trial court did not abuse its discretion in granting the sanctions.

We overrule QCA's third issue.

V.     New Trial

In its fourth issue, QCA appears to assert that the trial court erred in denying its motion for new trial; motion to vacate, modify, correct or reform the judgment; and motion for reconsideration and/or motion for rehearing because it attached to is post-trial motions evidence showing QCA overpaid Topletz by $43,902. We review a trial court's denial of these motions under an abuse of discretion standard. *See Kamat v. Prakash*, 420 S.W.3d 890, 905 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Dagan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.—Dallas 2003, no pet.).

QCA claims Iris agreed to allow QCA to present this evidence by motion for new trial, but the record shows that during trial Iris simply acknowledged, when discussing the issue of calculation of its damages, that if it were awarded $350,000 or something like that and if the actual books vindicate QCA, then QCA could always file a motion for new trial and prove up their books to show the commissions Iris should have received, but for QCA's breach of the agreement, was less than the amount awarded. But that is not what QCA did. Instead, QCA attempted to present evidence on an affirmative claim that QCA had not pleaded. While the trial court noted in its orders denying QCA's motions, that it considered the motions, the record is silent as to whether the court admitted and considered the post-trial evidence and found it

–11–

unpersuasive or refused to consider it. In all events, QCA has not shown that the trial court abused its discretion in denying its motions. We overrule QCA's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

141562F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

QUICK CHANGE ARTIST, LLC,
Appellant

No. 05-14-01562-CV      V.

IRIS T. ACCESSORIES, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-14118.
Opinion delivered by Justice Schenck.
Justices Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee IRIS T. ACCESSORIES recover its costs of this appeal from appellant QUICK CHANGE ARTIST, LLC.

Judgment entered this 13th day of February, 2017.