**BONANZA RESTAURANTS, Appellant,**

v.

**UNCLE PETE'S, INC., and David R. Carruthers, Appellees.**

No. 05–87–00610–CV.

Court of Appeals of Texas, Dallas.

Aug. 3, 1988.

Rehearing Denied Sept. 30, 1988.

Steven K. Terry, Dallas, for appellant.

H. Dee Johnson, Jr., Dallas, for appellees.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

Appellant Bonanza Restaurants sued appellees Uncle Pete's, Inc. and David R. Carruthers[1] for royalties due under a restaurant franchise agreement.[2] Appellees counterclaimed for rescission of the agreement and for damages, asserting fraud and violations of the Texas Deceptive Trade Practices Act.[3] After trial before a jury, the trial court rendered judgment rescinding the franchise agreement and Carruthers' guaranty of the performance of that agreement, awarding appellees attorney fees, and decreeing that Bonanza take nothing against Uncle Pete's and Carruthers.

Bonanza challenges the sufficiency of the evidence to support the jury's finding that its conduct was unconscionable in violation of the DTPA. Bonanza also complains that the trial court erred in granting

rescission without a jury finding that Uncle Pete's suffered actual monetary damages, and without restoring the parties to their respective positions prior to the franchise agreement. We overrule Bonanza's seven points of error and affirm the judgment of the trial court.

## I

Bonanza's business is franchising restaurants. Uncle Pete's purchased one such restaurant from franchisee Nancy Robb for $160,000 and, with Bonanza's consent, assumed Robb's obligations to Bonanza under the franchise agreement, including payment of royalties on sales. Carruthers, a principal of Uncle Pete's, guaranteed Uncle Pete's performance of its obligations under the franchise agreement.

Uncle Pete's quickly found that the restaurant could not be operated profitably and, only a few months after taking it over, changed its name and ceased to operate it as a Bonanza restaurant. When Bonanza sued to recover the royalties due under the franchise agreement which Uncle Pete's had never paid, Uncle Pete's countered with claims of fraud and DTPA violations. Basically, Uncle Pete's complained that it did not know and was not told when it undertook the obligations of the franchise agreement that the restaurant had a reputation for unsanitary operation and had been closed by city health authorities, that the restaurant had long operated at a loss, and that Bonanza's franchise operations were inefficient and impaired by Bonanza's legal and financial woes.

After a five-day trial, the jury found that:

—Bonanza's conduct in selling the franchise to Uncle Pete's was knowing, unconscionable, and a producing cause of damage to Uncle Pete's, within the meaning of the DTPA;

---

**1.** Bonanza also sued Nancy Robb originally, but dismissed her from the suit after she filed for protection under the bankruptcy laws.

**2.** Bonanza also sued to enjoin appellees from operating a restaurant in violation of the fran-

chise agreement. Bonanza has now abandoned its claim for injunctive relief.

**3.** TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon Supp.1988), herein referred to as the "DTPA". All statutory references are to this Act.

—The damages caused Uncle Pete's by Bonanza's unconscionable conduct, defined as the difference in the value of the restaurant as represented by Bonanza and as actually received by Uncle Pete's, was zero;

—Bonanza's statements defrauded Uncle Pete's;

—The damages Bonanza proximately caused Uncle Pete's by its fraud were zero;

—Uncle Pete's should be awarded $15,000 exemplary damages against Bonanza; and

—Reasonable fees for legal services rendered by appellees' attorney would be $16,740 in the trial court, $5,000 in the court of appeals, $2,500 for application for writ of error, and $2,500 if writ of error were granted.

The jury failed to find that:

—Bonanza misrepresented the characteristics, uses or benefits of the franchise agreement;

—Bonanza failed to disclose information which it knew concerning the sale of the franchise to induce Uncle Pete's to enter into the agreement when it otherwise would not have done so; and

—Bonanza failed to give Carruthers consideration for his personal guaranty.

Appellees objected that these findings were fatally inconsistent and moved for mistrial or a new trial. Alternatively, appellees moved for judgment granting them rescission and attorney fees and denying Bonanza any relief. Bonanza also moved for judgment, arguing that its right to royalties was undisputed. The trial court granted appellees' motion for judgment and denied the other motions.

## II

In points of error five and six Bonanza complains that the evidence is legally and factually insufficient to support the jury's finding that its conduct was unconscionable as defined by section 17.45(5) of the DTPA, which states:

An "unconscionable action or course of action" means an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

■ The bulk of Bonanza's argument is that the insufficiency of the evidence to support a finding of unconscionability is established by the jury's answers to three other questions. Specifically, Bonanza argues that the jury's negative answers to questions as to whether Bonanza misrepresented the nature of the franchise agreement and whether Bonanza failed to disclose information establish the insufficiency of the evidence to prove unconscionability under section 17.45(5)(A), that is, taking grossly unfair advantage. Further, Bonanza argues that the jury's "0" answer to the question as to what difference in value there was between the restaurant as represented and as delivered establishes the insufficiency of the evidence to prove unconscionability under section 17.45(5)(B), that is, a gross disparity between the value received and consideration paid. Thus, Bonanza concludes, the verdict itself shows that the evidence was insufficient for the jury to find unconscionable conduct.

Bonanza's argument is a non sequitur. The court, not the jury, determines sufficiency of the evidence. A jury finding indicates nothing as to whether there is sufficient evidence to support it, let alone whether there is sufficient evidence to support some other finding. Bonanza's reliance on three jury answers to show insufficiency of the evidence for a fourth is completely misplaced.

■ To this argument Bonanza adds only the summary assertion that the evidence is otherwise insufficient to support a finding of unconscionable conduct. Inasmuch as Bonanza has not undertaken to review the record in its brief, we need not set out in detail the evidence which supports the jury's verdict. Briefly summarized, the evidence shows that the restau-

rant Uncle Pete's purchased had developed a reputation for unsanitary operations and had been involuntarily closed by the city health department. The restaurant had operated at a loss for some time, eventually resulting in Robb's bankruptcy. The advertising cooperative used by Bonanza franchisees in the area was underfunded and of little benefit to the restaurant Uncle Pete's purchased. Despite Uncle Pete's best efforts, it could not make the restaurant a profitable operation in the months it operated under the name "Bonanza". From this evidence the jury was justified in finding that Bonanza's conduct was unconscionable.

We therefore overrule Bonanza's points of error five and six.

### III

In points of error one, two and seven, Bonanza complains that the trial court erred in rescinding the franchise agreement and Carruthers' guaranty absent a jury finding that Uncle Pete's sustained monetary damages. Bonanza also complains, in points of error three and four, that granting rescission allowed Uncle Pete's inequitably to retain the benefits of the transaction without paying for them.

As a rule, to obtain rescission under the common law a person must show that he has suffered actual damages. *See Russell v. Industrial Transp. Co.*, 113 Tex. 441, 258 S.W. 462 (1924); *Grundmeyer v. McFadin*, 537 S.W.2d 764, 769 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.). The same rule applies to rescission under the DTPA. *See Brown Foundation v. Friendly Chevrolet Co.*, 715 S.W.2d 115, 119 (Tex. App.—Dallas 1986, writ ref'd n.r.e.); *Wheeler v. Box*, 671 S.W.2d 75 (Tex.App.— Dallas 1984, no writ). "Actual damages" under the DTPA means damages recoverable at common law. *Raye v. Fred Oakley Motors, Inc.*, 646 S.W.2d 288, 290 (Tex.App. —Dallas 1983, no writ).

■ Bonanza argues that the jury's answers of "0" to questions as to what damages were caused by Bonanza's unconscionable conduct and fraud establish that Uncle Pete's sustained no actual damages, pre-

cluding rescission of the franchise agreement and guaranty. However, Bonanza overlooks the injury to Uncle Pete's caused by the burden of its obligations under the franchise agreement, including operation of the restaurant in a certain fashion and payment of royalties on sales as well as other charges. Uncle Pete's undisputedly incurred these obligations as a result of what the jury found to be Bonanza's fraud and unconscionable action in the sale of the franchise. The fact that the jury was not asked to place a monetary value on this injury makes it no less real. The appropriate remedy for this injury was rescission of the franchise agreement, and in turn, rescission of Carruthers' guaranty, which the trial court quite properly granted.

■ Bonanza argues that the trial court erred in granting rescission of the franchise agreement without an order restoring the *status quo ante* and because it allowed Uncle Pete's to retain the benefits it received under the transaction without paying for them. *See Finch v. McVea*, 543 S.W.2d 449 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). On this record we fail to see what benefits Uncle Pete's has retained under the franchise agreement. The few months it operated the restaurant as a Bonanza franchise, it lost money. Only when it ceased to operate the restaurant as a franchise did it begin to benefit. In effect, the status quo ante was never disturbed.

Accordingly, Bonanza's points of error one through four, and seven, are overruled.

AFFIRMED.