Motion for Rehearing Granted, Opinion of January 16, 2003, withdrawn,
Reversed and Judgment Rendered, and Opinion filed Septem









Motion for Rehearing
Granted, Opinion of January 16, 2003, withdrawn, Reversed and Judgment
Rendered, and Opinion filed September 4, 2003.

 

 

In The

 

Fourteenth
Court of Appeals

____________

 

NO. 14-01-00969-CV

____________

 

BEAL BANK, S.S.B., Appellant

 

V.

 

ROBERT H. SCHLEIDER III, Appellee

 



 

On Appeal from the 21st District Court

Burleson County, Texas

Trial Court Cause No. 22,546

 



 

O
P I N I O N  O N  R E H E A R I N G 

We
grant appellee=s motion for rehearing, deny the
requested relief, but withdraw our opinion filed January 16, 2003, and
substitute this opinion in its place. 








Appellant,
Beal Bank, S.S.B., appeals from a judgment on the jury=s
verdict in favor of appellee, Robert H. Schleider III, on his claim for fraud
against Beal Bank and on Beal Bank=s counterclaim for the full face
value of a promissory note.  The judgment
awarded Schleider (1) $141,933.98 in compensatory damages, offset by
$46,399.35, (2) $13,181.39 in prejudgment interest, and (3) and $80,000 in
exemplary damages.[1]  In our original opinion of January 16, 2002,
we reversed and rendered judgment Schleider take nothing on his fraud claim
against Beal Bank, and that Beal Bank recover $206,695.03 plus post-judgment
interest.

In
his motion for rehearing, Schleider argues, among other matters, that he should
recover on his alternative theory of negligent misrepresentation, for which the
jury awarded $156,182.91 in past damages and $89,583.33 in future damages.  Concluding the evidence is legally
insufficient to support the jury=s finding of negligent
misrepresentation, and declining to alter our analysis of the issues addressed
in our original opinion, we again render judgment Schleider take nothing
against Beal Bank, and that Beal Bank recover $206,695.03 plus post-judgment
interest.

FACTUAL
AND PROCEDURAL BACKGROUND

The
genesis of this appeal is a promissory note executed in 1993 by Schleider and
payable to NAB Asset Venture (NAB).  The
face amount of the note, designated a ARenewal and Modification Promissory
Note,@
was $219,264.22.  The note contained a
discount paragraph, which provided Schleider could discharge the face amount of
the note, plus interest, by paying $151,000, if he complied with a schedule
calling for the final payment to be made July 1, 1998.  The discount paragraph required Schleider to
make monthly payments of $2,500 and gave him the right to defer up to three
payments a year in exchange for a $500 fee, with the remaining deferred payments
then being due July 1, 1998.  On several
occasions, Schleider took advantage of the deferral provision.

In
September, 1995, Beal Bank purchased the note from NAB.  For the next two years, Schleider made either
a loan payment or paid the $500 fee to defer payments.  Schleider testified he had no intention of
letting the undiscounted note come due.








In
December 1997, Schleider had heart surgery, was unable to work for about two
months, and paid the $500 fee to defer the next three loan payments.  In February 1998, Schleider applied for a
$60,000 home equity loan from Wells Fargo. 
Wells Fargo approved the loan and gave Schleider a cashier=s
check for $60,000.  Schleider testified
he secured the loan so he could pay various debts, including the amount that
would be due under the note when it matured July 1, 1998.

In
early May 1998, Beal Bank sent a form letter reminding Schleider the note would
mature July 1, and Schleider would be required to pay the outstanding
indebtedness at that time.  Beal Bank=s
letter requested Schleider Ato communicate to this office as
soon as possible your intentions with regard to full satisfaction of this debt.@  At the time it was Beal Bank=s
practice to send this type letter to every borrower with a loan maturing in the
near future.  The reminder letter was
signed by William Dickenson, a Beal Bank loan officer who at that time had
responsibility for sending form reminder letters.

After
receiving the letter, Schleider called Dickenson.  Schleider=s phone records reflect a 30 second
call to Dickenson=s phone number on May 19, but
Schleider did not talk with Dickenson on that date.  Schleider=s phone records also reflect a 2.9
minute call to Dickenson=s number on May 28.  Schleider was not sure whether they talked
that day or in a call returned by Dickenson, but he remembered the conversation
was short and believed it occurred when Schleider called Dickenson.








Schleider
testified he explained to Dickenson he had obtained a home equity loan to pay
off the note, but it would be easier for him if Beal Bank would extend the loan
for another year or year and a half. 
According to Schleider, Dickenson said the bank would need to charge
interest on the $40,000 (the discounted balance as of July 1, 1998) for the
additional time of the payments. 
Schleider also testified Dickenson indicated an extension would not be a
problem, Schleider did not need to do anything else to secure the extension,
and Beal Bank would get back to him with the details.  According to Schleider, Dickenson said, AWe=re
set on go.@ 
Dickenson did not indicate in his phone call that he did not have the
authority to authorize an extension.

Based
on his conversation with Dickenson, Schleider expected to receive papers from
Beal Bank reflecting an agreement, but he received nothing.  Schleider, however, did not recall Dickenson
stating he would send such paperwork. 
Schleider conceded he and Dickenson never agreed to a specific interest
rate.  Schleider also conceded they never
reached an agreement about the duration of the extension.  Finally, Schleider was aware of, and
understood, the provision in the note requiring any modification of its terms
to be in writing.

Schleider
nevertheless was Aa hundred percent sure@
at the conclusion of the phone call with Dickenson that they had agreed on a
deal.  Schleider testified that, if
Dickenson had expressed any reservation about the extension, Schleider would
have paid the $40,000 balance, rather than trigger the provision in the note
for payment of the non-discounted balance.

Dickenson,
who was not assigned to Schleider=s loan, did not remember talking
with Schleider and did not believe he would have made the statements Schleider
attributed to him.  Dickenson had no
authority to grant an extension like the one Schleider described.  His practice, when receiving calls like
Schleider=s, was to ask that the request be
put in writing so he could forward it to the head of Beal Bank=s
commercial loan department for assignment to a loan officer.

Waiting
to hear from Dickenson or to receive papers regarding the extension, Schleider
made two payments of $2,500Cone in June and one in July.  Beal Bank accepted these payments, and
Schleider testified, in choosing not to pay the $40,000 balance under the
discount provision, he relied on Dickenson=s assurances about the extension.








Schleider,
however, did not try to call Dickenson after May 1998; and, about a week before
the July 1, 1998 maturity date, the loan was assigned to Don Barber, another
Beal Bank loan officer.  The note
provided a five-day grace period, and Barber sent Schleider a reminder, dated
July 2, 1998, that the note had matured. 
The reminder also contained the following handwritten notation over
Barber=s
signature:  Apls
call me to discuss.@

The
amount due and owing on the note was stated as $40,000 plus interest.  Schleider did not pay the $40,000, but made a
$2,500 payment on July 3.  Because
Schleider did not make the full discounted payment by the maturity date or the
grace period, he owed $206,695.03 as of July 1, 1998.

Although
Schleider received the July 2 reminder, in his mind the agreement he had with
Dickenson was still Aon the table.@  Schleider did not follow up on the July 2
reminder, despite the handwritten request for Schleider to call.

In
late July or early August, Barber called and spoke with Schleider by
telephone.  According to Schleider, he
explained his discussions with Dickenson and said he was expecting to hear
something about the terms of the arrangement. 
Barber said, unless Schleider could prove it and had it in writing, it
did not exist.  Barber had no knowledge
of a prior conversation between Schleider and Dickenson, and Schleider did not
ask to speak with Dickenson during that or any other phone call with Barber.

Schleider
also did not attempt to call Dickenson. 
On August 10, 1998, Schleider wrote to Barber setting forth various
proposals for paying off the note. 
Schleider also referred to the May 28 telephone conversation with
Dickenson. Schleider explained he thought someone would call him back, but no
one had.  Finally, Schleider referred to
the July payment he had made while waiting for a telephone call.








Barber
testified he did not contact Dickenson in 1998 to investigate Schleider=s
claim.  Barber did not do so because,
according to Barber, Schleider=s claims were beyond the normal
scope of Beal Bank=s practiceCwhat
Schleider was saying Dickenson had done Ajust . . . couldn=t
have happened.@ 
Barber did not talk with Dickenson about the alleged conversation until
November 1999 or May 2000.  Clark
Enright, Beal Bank=s senior vice president and head of
the commercial loan department testified that, under these facts, he would have
asked Dickenson what the facts were and could think of no good excuse for
Barber=s
failure to do so for a year or a year and a half.

In
October 1999, a little over a month after receiving a demand letter from Beal
Bank=s
attorney, Schleider sued Beal Bank.  He
asserted claims for fraud, negligent misrepresentation, breach of contract, and
sought Adeclaratory
judgment of enforcement [sic] of a contract as modified, based upon . . . Beal=s
failure to abide by the terms of an oral modification of a written agreement
with . . . Schleider.@ 
Beal Bank answered and counterclaimed, seeking to recover the unpaid
principal and accrued interest due under the note.

Trial
was to a jury.  The parties stipulated
Schleider failed to comply with the terms of the note.  The jury found in favor of Schleider on all
questions the jury answered. 
Specifically, the jury found (1) Schleider=s failure to comply with the terms
of the note was excused, (2) Beal Bank committed fraud against Schleider, (3)
Schleider sustained $123,750.00 in past damages and in reasonable probability
would sustain $64,583.33 in future damages as a result of the fraud, (4) Beal
Bank made a negligent misrepresentation on which Schleider justifiably relied,
(5) Schleider sustained $156,182.91 in past damages and in reasonable
probability would sustain $89,583.33 in future damages as a result of the
negligent misrepresentation, (6) there was clear and convincing evidence the
harm to Schleider resulted from fraud, and (7) $80,000 in exemplary damages
should be assessed against Beal Bank.

The
trial court rendered judgment awarding Schleider fraud and exemplary
damages.  The court denied Beal Bank
recovery on its counterclaim, but offset Schleider=s
damages by $46,399.35 (the amount plus prejudgment interest, which Schleider
stipulated he still owed under the note). 
The trial court subsequently denied Beal Bank=s
motion for new trial.

 








DISCUSSION

I.  Introduction

In four issues,
Beal Bank argues the jury=s
findings Afail
to support the judgment.@  Specifically, Beal Bank challenges the
following findings: in issue one, the finding of fraud; in issue two, the
findings of fraud damages; in issue three, the finding of exemplary damages;
and in issue four, the finding in support of Schleider=s defense of excuse. 
Because we conclude the evidence was legally insufficient to support the
jury=s
finding of fraud, we sustain Beal Bank=s issue one. 
Because of our resolution of issue one, we do not address issues two and
three, dealing with fraud damages.  On
rehearing, we address the sufficiency of the evidence to support Schleider=s alternative theory of recovery, negligent
misrepresentation, and conclude the evidence is legally insufficient to support
that theory, as well.  Finally, we
sustain Beal Bank=s
issue four, concluding the evidence was legally insufficient to support the
jury=s
finding of excuse.

II.

Issue One: Legal Sufficiency of the
Evidence to Support the Finding of Fraud and the Alternative Theory of
Negligent Misrepresentation

 








A. 
Standard of review.  In issue one, Beal Bank argues the evidence
was legally, or in the alternative factually, insufficient to support the jury=s
finding Beal Bank committed fraud against Schleider.  When a party challenges the legal sufficiency
of the evidence supporting an adverse finding on an issue on which it does not
have the burden of proof, that party must demonstrate on appeal that there is
no evidence to support the adverse finding. 
Price Pfister, Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341,
347 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied) (citing  Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983)).  We
consider all the evidence in the light most favorable to the jury=s
verdict, indulging every reasonable inference in favor of the prevailing
party.  Price Pfister, 48 S.W.3d
at 347 (citing Associated Indem. Corp. v. CAT Contracting, Inc., 964
S.W.2d 276, 285‑86 (Tex. 1998)). 
We will sustain a legal insufficiency point when (a) there is a complete
absence of evidence of a vital fact, (b) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact, (c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of a vital
fact.  Price Pfister, 48 S.W.3d at
347 (citing  Merrell Dow Pharms., Inc.
v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).  If the record contains any evidence of
probative force to support the jury=s finding, we must overrule the
legal insufficiency point.  Price
Pfister, 48 S.W.3d at 347 (citing ACS Investors, Inc. v. McLaughlin,
943 S.W.2d 426, 430 (Tex. 1997)).

B. 
Schleider=s fraud claim.  In the present case, Schleider=s
allegation of fraud rested on his purported conversation with Dickenson.  Therefore, to recover for fraud, Schleider
had to prove: (1) Dickenson made a material representation; (2) the
representation was false; (3) when Dickenson made the representation, Dickenson
knew it was false or made it recklessly without any knowledge of the truth and
as a positive assertion; (4) Dickenson made the representation with the
intention that Schleider act on it; (5) Schleider  acted in reliance upon the representation;
and (6) Schleider suffered injury.  See
Johnson & Higgins v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex.
1998).  A future promise to act, such as
that attributed to Dickenson, constitutes fraud only when made with the intent
to deceive and with no intention of performing the act.  Formosa Plastics Corp. v. Presidio Eng=rs
& Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998); see T.O. Stanley Boot Co. v. Bank of El Paso,
847 S.W.2d 218, 222 (Tex. 1992) (stating lack of intent to perform must exist
at time promise is made).

Beal
Bank argues there was no evidence of intent to deceive.   Because intent to deceive or defraud is not
susceptible to direct proof, it invariably must be proven by circumstantial
evidence.  See Anderson, Greenwood
& Co. v. Martin, 44 S.W.3d 200, 215 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied) (citing Spoljaric v. Percival Tours, Inc.,
708 S.W.2d 432, 435 (Tex. 1986)).  In Lozano
v. Lozano, Chief Justice Phillips explained the application of the Aequal
inference rule@ to the review of circumstantial
evidence: 








The equal inference rule provides that a jury may not
reasonably infer an ultimate fact from meager circumstantial evidence Awhich could give rise to any number of inferences, none
more probable than another.@  Hammerly Oaks,
Inc. v. Edwards, 958 S.W.2d 387, 392 (Tex. 1997).  Thus, in cases with only slight
circumstantial evidence, something else must be found in the record to
corroborate the probability of the fact=s existence or non‑existence.

. . . The applicable rule was succinctly stated in Litton
[Industrial Products, Inc. v. Gammage, 668 S.W.2d 319 (Tex. 1984)] as
follows:  AWhen circumstances are consistent with either of the two
facts and nothing shows that one is more probable than the other, neither fact
can be inferred.@  Id. at 324.

. . . .

Properly applied, the equal inference rule is but a
species of the no evidence rule, emphasizing that when the circumstantial
evidence is so slight that any plausible inference is purely a guess, it is in
legal effect no evidence.  But
circumstantial evidence is not legally insufficient merely because more than
one reasonable inference may be drawn from it. 
If circumstantial evidence will support more than one reasonable
inference, it is for the jury to decide which is more reasonable, subject only
to review by the trial court and the court of appeals to assure that such
evidence is factually sufficient.

Circumstantial evidence often requires a fact finder to
choose among opposing reasonable inferences. 
See, e.g., Farley v. M M Cattle Co., 529 S.W.2d 751, 757
(Tex.1975).  And this choice in turn may
be influenced by the fact finder=s views on credibility. 
Thus, a jury is entitled to consider the circumstantial evidence, weigh
witnesses=
credibility, and make reasonable inferences from the evidence it chooses to
believe.  Benoit v. Wilson, 150
Tex. 273, 239 S.W.2d 792, 797 (1951).

 

52
S.W.3d 141, 148B49 (Tex. 2001) (Phillips, C.J.,
concurring and dissenting).[2]








Chief
Justice Phillips further explained, although circumstantial evidence may be
used to establish any material fact, Ait must transcend mere suspicion.@  Id. at 149.  Reasoning from circumstantial evidence often
involves linking apparently insignificant and unrelated events to establish a
pattern.  See id.  A court, therefore, must not view each piece
in isolation, but in view of all known circumstances.  See id.  Nevertheless, A[l]egally sufficient circumstantial
evidence requires a logical bridge between the proffered evidence and the
necessary fact.@ 
Id. at 152 (citing Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059,
1064 (1898)).

Schleider
argues the following evidence supports the jury=s finding of fraudulent intent:

$          A telephone conversation between
Schleider and Dickenson, in which Dickenson told Schleider the extension was
not a problem, Schleider did not have to do anything else, and the bank would
get back with Schleider;

$          Schleider=s telephone records indicating a 2.9 minute call to Beal
Bank on May 28, 1998, and testimony from Barber, another Beal Bank loan
officer, it would take only five seconds for a loan officer to tell Schleider
to put the request in writing because the loan officer did not have authority
to approve the loan;

$          Purported inconsistency in Barber=s testimony about whether Dickenson had told Barber he
had not talked with Schleider or whether Dickenson told Barber he had not made
a deal with Schleider;

$          The bank=s not having called Dickenson as a live witness;

$          Dickenson=s testimony (by deposition) he had no recollection of
telling Schleider an extension would not be a problem, coupled with Dickenson=s testimony he (Dickenson) had no idea why he would have
made a particular statement Schleider attributed to him;

$          The lack of any written documentation
by Dickenson or Beal Bank regarding the conversation between Dickenson and
Schleider;

$          Barber=s failure, for well over a year, to contact Dickenson to
investigate Schleider=s
report of the conversation with Dickenson, coupled with testimony from Beal
Bank=s
president there was no good excuse for this failure;








$          A motive on Beal Bank=s part to mislead Schleider so Beal Bank could collect a
balance of more than $200,000 instead of approximately $40,000;

$          A lack of motive on Schleider=s part for missing the final installment payment; and

$          Testimony
from the managing director and senior vice president of another bank that he
would not have to go to a loan committee for approval of a $37,000 loan, but
could do that himself.

In
short, the only representations Schleider attributes to Dickenson are (1) the
extension would not be a problem, (2) Awe=re set on go,@
and (3) Beal Bank would get back to Schleider. 
Considering the preceding evidence in the light most favorable to the
jury=s
verdict and indulging every reasonable inference in favor of Schleider, we
cannot conclude there is any evidence of probative force to support a finding
Dickenson, at the time he purportedly made these representations, had the
intent of deceiving Schleider, with no intention Beal Bank would perform.

The
fact Beal Bank did not perform, standing alone, is no evidence of a lack of
intent to perform at the time the agreement was made, but only Aa
circumstance to be considered with other facts to establish intent.@  Schindler v. Austwell Farmers Coop.,
841 S.W.2d 853, 854 (Tex. 1992) (per curiam). 
The mere failure to perform a contract is no evidence of fraud.  See id.  Denial of having made a promise is also a
factor showing no intent to perform when the promise was made.  T.O. Stanley Boot, 847 S.W.2d at
222.  In the present case, however,
Dickenson did not deny having made the purported representations.  Dickenson simply did not recall the content
of his conversation with Schleider, and other testimony indicated he would not have
had the authority to approve the extension personally.[3]








The
evidence in the present case is comparable to the type and amount of evidence
found legally insufficient to establish intent to defraud in T.O. Stanley
Boot.  In T.O. Stanley Boot,
the petitioners claimed the bank misrepresented it would loan them
$500,000.  847 S.W.2d at 222.  At trial, the bank=s
president denied having agreed to make the loan.  Id. 
In addition, the petitioners referred to a memorandum, written shortly
after a meeting in which the loan was discussed, in which a bank officer
referred to compiling resumes for a Small Business Administration loan package,
thereby suggesting the bank was looking at alternative sources for the
petitioners to obtain the loan.  Id.  The supreme court concluded Athe
evidence in the record of the Bank=s intention not to perform is so
weak that it creates only a mere surmise or suspicion of its existence.  When evidence is so weak it constitutes no
evidence.  Such evidence will not support
a verdict.@ 
Id.

C. 
Disposition of issue one as related to fraud.  Just as the evidence was legally insufficient
to support the verdict in T.O. Stanley Boot, so it is insufficient to
support the jury=s finding of fraud in the present
case.  We sustain Beal Bank=s
issue one.  Because of our resolution of
Beal Bank=s issue one, it is not necessary to
address Beal Bank=s issues two and three, which are
directed at the compensatory and exemplary damages for fraud.








D. 
Schleider=s alternative theory of
recovery:  negligent misrepresentation. 
On rehearing, Schleider argues he is entitled to elect recovery for
negligent misrepresentation in the face of this court=s
reversal of his judgment for fraud.[4]  In Boyce Iron Works, Inc. v. Southwestern
Bell Telephone Co., the supreme court explained, AWhen
the jury returns favorable findings on two or more alternative theories, the
prevailing party need not formally waive the alternative findings.  That party may seek recovery under an
alternative theory if the judgment is reversed on appeal.@  747 S.W.2d 785, 787 (Tex. 1988).  Beal Bank, however, initially contends Schleider
waived his right to recover on the alternative theory because he did not
incorporate the jury=s findings on that theory into the
judgment.[5]  In support, Beal Bank relies on the following
language in Boyce: ABy incorporating the jury=s
findings in the court=s judgment, Boyce did everything it
could to preserve the right of recovery under the alternative theory.@  Id. 
The supreme court reiterated this language in Oak Park Townhouses v.
Brazosport Bank of Texas, N.A., 851 S.W.2d 189, 190 (Tex. 1993) (per
curiam).

We
have found no case holding that the jury=s findings on the alternative theory
must be incorporated into the judgment in order for a party to rely on that
theory in the event of appellate reversal. 
To the contrary, in Commonwealth Lloyds Insurance Co. v. Downs,
the Fort Worth court of appeals concluded the appellee had not waived his right
to an appellate cross-point even though the trial court, which signed the
appellee=s
proposed judgment, had specifically denied recovery under the alternative
theories in question.  853 S.W.2d 104,
109 (Tex. App.CFort Worth 1993, writ denied).  We therefore consider the sufficiency of the
evidence to support the jury=s verdict in favor of Schleider on
his alternative theory of negligent misrepresentation.








The
elements of a cause of action for negligent misrepresentation are:  (1) the defendant=s
making a representation in the course of its business, or in a transaction in
which it has a pecuniary interest; (2) the defendant=s
supplying Afalse information@
for the guidance of others in their business; (3) the defendant=s
failure to exercise reasonable care or competence in obtaining or communicating
the information; and (4) the plaintiff=s suffering pecuniary loss by
justifiably relying on the representation. 
Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied) (citing Fed. Land Bank Ass=n
v. Sloane, 825 S.W.2d
439, 442 (Tex.1991)).  The type of Afalse
information@ contemplated in a negligent
misrepresentation case is a misstatement of existing fact, not a promise of
future conduct.  Id. (citing Airborne
Freight Corp., Inc. v. C.R. Lee Enters., Inc., 847 S.W.2d 289, 294 (Tex.
App.CEl
Paso 1992, writ denied)).

Moreover,
when a written contract exists, it is more difficult for a party to show
reliance on subsequent oral representations. 
Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.,
907 S.W.2d 904, 908 (Tex. App.CHouston [1st Dist.] 1995, writ
denied).  A[N]egligent misrepresentation is a
cause of action recognized in lieu of a breach of contract claim, not usually
available where a contract was actually in force between the parties.@  Airborne Freight, 847 S.W.2d at 295.








Schleider
points to the following evidence of Dickenson=s representations:  (1) the extension, with Schleider paying at
least $2,500 a month at the current interest rate, would not be a problem based
on Schleider=s record , (2) Awe=re
set on go,@ and (3) there was nothing for
Schleider to do because Beal Bank would get back to Schleider with the
details.  As Schleider characterized
these statements in closing argument in the trial court, they constituted a representation
Ayour
note will be extended@ (emphasis added).  In argument in the trial court and in his
original brief in this court, Schleider also characterized these statements as
a Apromise.@  On rehearing, Schleider, for the first time,
characterizes Dickenson as Arepresenting that the bank had
extended the maturity date for the loan, when in fact it had not.@  As set forth and argued at trial, however,
there was no evidence Dickenson made a misstatement of existing fact; rather
the statements Schleider attributed to him involved future conduct, which are
not actionable under a theory of negligent misrepresentation.  See Allied Vista, 987 S.W.2d at 141.

Additionally,
the parties had a written contract governing the loan.  The note contained the provision that A[n]o
modification or indulgence by any holder hereof shall be binding unless in
writing.@  As the First Court of Appeals stated in Bluebonnet
Savings, AThe contract itself is notice of
binding duties, and when it requires that amendments be in writing, that is
additional notice not to rely on oral representations.@  907 S.W.2d at 908.

In
Bluebonnet, the court of appeals concluded, as a matter of law, that the
borrowers failed to prove they justifiably relied to their detriment on  statements by the lender=s
agents that Aeverything looked fine@
regarding a loan restructuring proposal and Aeverything would be okay.@  Id. at 909.  In Bluebonnet, the borrower, whose
principal was an experienced, self‑employed businessman who had completed
numerous large commercial real estate transactions, (1) admitted that the
lender=s
employees also had stated the proposal had to be presented to the loan
committee, (2) knew the loan committee=s approval was a necessary
prerequisite to restructuring, and (3) was in receipt of frequent
correspondence from the lender=s attorneys threatening foreclosure
and repeatedly posting property securing the loan for sale.  Id. at 907, 909B10.








In
the present case, Schleider had been in the restaurant business since 1974,
during which time he had arranged many loans. 
He testified there had been Arenewals and everything had been via
telephone.  We=d go in and sign what we talked about on the telephone. . . . [F]or years we have . . .
dealt that way here@ (emphasis added).  Although, unlike the events in Bluebonnet
Savings, there is no testimony Dickenson told Schleider the proposal had to
be presented to the loan committee, Schleider testified he was aware of the
provision  that no modification was
binding unless it was in writing.  Schleider
also testified he knew that the details, like the interest rate and specific
due date, were still to be determined. 
Given Schleider=s awareness that modifications had
to be in writing and given that any modification depended on the parties
agreeing to an interest rate and due date, we conclude, as a matter of law,
Schleider failed to prove he justifiably relied to his detriment on Dickenson=s
statements.  See Bluebonnet Savings,
907 S.W.2d at 909 (holding no justifiable reliance as a matter of law); see
also In re Absolute Res. Corp., 76 F. Supp.2d 723, 730, 732B33
(N.D. Tex. 1999) (holding, as a matter of law, no justifiable reliance on
statements like Athe deal is real@
and Awe
will fund next week@; also observing statement loan was
a Adone
deal,@
not sufficient to support claim for negligent misrepresentation).[6]

We
conclude there is no evidence to support the jury=s verdict on Schleider=s
alternative theory of negligent misrepresentation.  Accordingly, we render judgment Schleider
take nothing under his alternative theory of recovery.

III.

Issue Four: Sufficiency of the
Evidence to Support the Finding of Excuse

 

In
issue four, Beal Bank contends the evidence was legally insufficient, or in the
alternative factually insufficient, to support the jury=s
finding Schleider=s failure to comply with the terms
of the note was excused.  The trial court
charged the jury on modification, waiver, novation, and equitable estoppel,
respectively, as follows:

Failure to comply with a term in an agreement is excused
if the parties agreed that a new term would take its place.

Failure to comply by Rob Schleider is excused if
compliance is waived by Beal Bank. 
Waiver is an intentional surrender of a known right or intentional
conduct inconsistent with claiming the right.

Failure to comply with the one agreement is excused if
the parties agreed that a new agreement would take its place.








Failure to comply by Rob Schleider
is excused if all of the following circumstances occurred:      

1.         Beal
Bank       

a.         by
words or conduct made a false representation or concealed material facts; 

b.         with
knowledge of the facts or with knowledge or information that would lead a
reasonable person to discover the facts; and

c.         with the
intention that Rob Schleider would rely on the false representation or
concealment in acting or deciding not to act; and

2.         Rob
Schleider            

a.         did
not know and had no means of knowing the real facts; and

b.         relied to
his detriment on the false representation or concealment of material
facts.

 

A. 
Modification and novation.  As the jury was instructed, the defenses of
modification and novation rested, in part, on the existence of an agreement
between Schleider and Beal Bank.[7]  Beal Bank argues there is no evidence
Schleider and Beal Bank agreed on the material terms so as to create a binding
contract, such as would support modification or novation.  We agree.








When
the parties leave an essential term open for future negotiation, there is no
binding contract.  T.O. Stanley,
846 S.W.2d at 221.[8]  In the present case, there is no evidence
Schleider and Beal Bank agreed on the duration of an extension of the loan, a
new maturity date, the rate of interest that would apply, or the amount and
number of additional payments.  Thus,
there is no evidence of a binding agreement in the present case.  See T.O. Stanley Boot, 847 S.W.2d at
221B22
(holding alleged contract to make $500,000 line of credit available failed for
indefiniteness when no evidence was introduced regarding interest rate of
alleged loan or repayment terms); Gerdes v. Mustang Exploration, 666
S.W.2d 640, 644 (Tex. App.CCorpus Christi 1984, no writ)
(holding contract for sale of water, which did not specify price, was
unenforceable because price of water was essence of contract); Bridewell v.
Pritchett, 562 S.W.2d 956, 958B59 (Tex. Civ. App.CFort
Worth 1978, writ ref=d n.r.e.) (holding contract
unenforceable because rate of interest was Aof the essence@
and not Adetail@
to be supplied by court); Terrell v. Nelson Puett Mortgage Co., 511
S.W.2d 366, 369 (Tex. Civ. App.CAustin 1974, writ ref=d
n.r.e.) (holding promise lacked definiteness of essential element, i.e.,
the total sum to be underwritten during a period of six years).  Because there is no evidence of a
binding  agreement, there is no evidence
of modification or novation.

B. 
Waiver.  Waiver is Aan intentional relinquishment of a
known right or intentional conduct inconsistent with claiming that right.@  Cont=l Casing Corp. v. Siderca Corp., 38 S.W.3d 782, 789 (Tex. App.CHouston
[14th Dist.] 2001, no pet.) (citing United States Fid. & Guar. Co. v.
Bimco Iron & Metal Corp., 464 S.W.2d 353, 357 (Tex. 1971)).  Waiver is an affirmative defense that can be
established by a party=s express renunciation of a known
right, or by silence or inaction for so long a period as to show an intention to
yield the known right.  Cont=l
Casing, 38 S.W.3d at
789 (citing Tenneco Inc. v. Enter. Prods. 
Co., 925 S.W.2d 640, 643 (Tex. 1996)).  Waiver is largely a matter of intent.  Cont=l Casing, 38 S.W.3d at 789.   Thus, for a party=s
actions to support a finding of implied intent, the surrounding facts and
circumstances must clearly demonstrate intent. 
See id.  (citing Motor
Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass=n, 1 S.W.3d 108, 111 (Tex. 1999)).








The
only evidence to which Schleider can point to support a finding of waiver are
Dickenson=s purported representations that (1)
an extension would not be a problem and (2) Beal Bank would get back to
Schleider.  As discussed above, these and
other statements attributed to Dickenson do not constitute a binding agreement
between the parties to extend the maturity date.  Moreover, these representations are not
inconsistent with the requirement in the note that A[n]o
modification or indulgence by any holder hereof shall be binding unless in
writing.@  Dickenson=s purported representations are no
evidence Beal Bank was waiving its right to enforce the original terms of the
note.[9]

C. 
Estoppel.    ACourts have emphasized that >estoppel
requires a reasonable or justified reliance on the conduct or
statement of the person sought to be estopped by the person seeking the
benefits of the doctrine.=@  Allied Vista, 987 S.W.2d at 142
(quoting Simpson v. MBank Dallas, N.A., 724 S.W.2d 102, 108 (Tex. App.CDallas
1987, writ ref=d n.r.e.)) (emphasis in Simpson).  For the reasons set forth in Section II.D.,
above, under the discussion of negligent misrepresentation, we hold, as a
matter of law, Schleider failed to prove he justifiably relied on Dickenson=s
statements.         

In
the present case, there is no evidence to support the jury=s
finding that Schleider=s failure to comply with the terms
of the note was excused.  We sustain Beal
Bank=s
issue four.

CONCLUSION

Having
sustained Beal Bank=s issue one, we reverse that portion
of the judgment awarding Schleider $141,933.98 in compensatory damages,
$13,181.39 in prejudgment interest, and $80,000 in exemplary damages on his
claim for fraud.  We render judgment
Schleider take nothing on his claims for fraud and negligent misrepresentation.








Having
sustained Beal Bank=s issue four, we reverse that
portion of the judgment ordering Beal Bank take nothing on its
counterclaim.  The parties stipulated
Schleider failed to comply with the terms of the note, which had a balance due
of $206,695.03 on July 1, 1998. 
Accordingly, we render judgment Beal Bank recover $206,695.03 plus
post-judgment interest on its counterclaim against Schleider.[10]

 

 

 

/s/        John
S. Anderson

Justice

 

 

 

 

 

Judgment rendered and Opinion filed
September 4, 2003.

Panel consists of Justices Yates,
Anderson, and Frost.











[1]  The $46,399.35
offset comprises $35,000, which Schleider stipulated he owed Beal Bank, plus
$11,399.35 in prejudgment interest on that amount.  The $13,181.39 in prejudgment interested was
calculated on the past damages found by the jury, less the $46,399.35 credit.





[2]  Chief Justice Phillips also explained:

 

Litton
exemplifies the type of case in which the rule may apply.  There, the Deceptive Trade Practices Act
applied if, but only if, a ratchet adapter was sold after the Act's effective
date.  Similar adaptors had been sold
both before and after this date, and nothing in the record provided a clue
about the particular adaptor's date of manufacture or sale.  Thus, the meager circumstantial evidence gave
rise to equal inferences, not because two or more reasonable inferences could
be drawn, but because there was no reasonable basis in the record for inferring
either that the ratchet adaptor was or was not sold after the effective date of
the DTPA.

 

Lozano
v. Lozano, 52 S.W.3d 141, 148 (Tex.
2001) (Phillips, C.J., concurring and dissenting).

 





[3]  As in oral
argument , Schleider, in his post-submission brief, emphasizes Dickenson=s testimony about his lack of ability to approve the
extension.  Schleider then analogizes his
case to Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998).  In Formosa
Plastics, however, the  director of
Formosa=s civil department admitted Formosa acted deceptively
by representing in its bid package contractors would have the ability to
schedule delivery of concrete when in actuality Formosa had secretly decided to
set up its own delivery schedule in order to save money.  See id. at 44.  In the present case, Dickenson=s inability to approve the extension or to present it
to the approval committee says nothing about whether, when Dickenson made the
purported representations to Schleider, Dickenson had no intention Beal Bank
would perform.  It merely reflects Beal
Bank failed to perform the agreement Schleider claims it made through
Dickenson.





[4]  In our
original opinion, we declined to address 
recovery under the alternative theory 
of negligent misrepresentation because the parties had not briefed the
issues of liability and damages under that theory.  See Crum & Forster, Inc. v. Monsanto Co.,
887 S.W.2d 103, 119B20 (Tex. App.CTexarkana
1994) (declining to address recovery under alternative theory when parties did
not brief issue), vacated pursuant to settlement agreement, No. 06‑92‑00100‑CV,
1995 WL 273592 (Tex. App.CTexarkana Mar. 9, 1995).  We did however, observe Schleider would be
permitted, in a motion for rehearing, to argue the issues of liability and
damages under his alternative theory.  See
Chesshir v. First State Bank, 620 S.W.2d 101, 101B02 (Tex. 1981) (per curiam) (holding court of appeals
erred when it did not consider appellees=
conversion action even though it was urged for the first time on rehearing
after appellate court reversed judgment in appellees= favor); see also Boyce Iron Works, Inc. v.
Southwestern Bell Telephone Co., 747 S.W.2d 785, 787 (Tex. 1988) (following
Chesshir).  Both parties have now briefed
the issues.





[5]  Beal Bank also
argues Schleider is seeking greater relief than that provided under the
existing judgment because (1) the actual damages found for negligent
misrepresentation were greater than those for fraud, and (2) the judgment
contains a Mother Hubbard cause.  The
first argument overlooks the fact that exemplary damages are not available for
the negligent misrepresentation claim. 
The second argument is not supported by authority.  See Tex.
R. App. P. 38.1(h).





[6]  Schleider
cites two cases in which courts have compared the concept of unjustifiable
reliance to that of comparative negligence: Haralson v. E.F, Hutton Group,
Inc., 919 F.2d 1014, 1025 n. 5 (5th Cir. 1990); and D.S.A., Inc. v.
Hillsboro Indep. Sch. Dist., 975 S.W.2d 1, 18 (Tex. App.CWaco 1997), rev=d on other grounds, 973 S.W.2d 662  (Tex.
1998).  He then suggests Beal Bank, by
not requesting a jury question on comparative negligence, waived any argument
there was no evidence of justifiable reliance. 
As discussed above, however, justifiable reliance is an element of
negligent misrepresentation; and, thus, it was Schleider=s burden to prove he justifiably relied on Dickenson=s representations.





[7]  The essential elements of a novation are:  (1) a previous, valid obligation; (2) a
mutual agreement of the parties to the acceptance of a new contract; (3) the
extinguishment of the old contract; and (4) the validity of the new
contract.  Vickery v. Vickery, 999
S.W.2d 342, 356 (Tex. 1999).     





[8]    Whether the
parties reached an agreement is a question of fact.  See Scott v. Ingle Bros. Pac., Inc.,
489 S.W.2d 554, 556  (Tex. 1972).  Whether an agreement has all the essential
terms to be an enforceable agreement, however, is a question of law.  See America=s Favorite Chicken Co. v. Samaras, 929 S.W.2d 617, 622, 625  (Tex. App.CSan
Antonio 1996, writ denied) (contrasting factual question of whether agreement
existed with legal question of whether existing agreement comprised all
essential terms); see also McCreary v. Bay Area Bank & Trust, 68
S.W.3d 727, 733 (Tex. App.CHouston [14th Dist.] 
2001, pet. dism=d) (stating question whether deposit contract is
legally enforceable or binding is question of law); Gaede v. SK Invs., Inc.,
38 S.W.3d 753, 757 (Tex. App.CHouston [14th Dist.] 2001, pet. denied) (stating
whether agreement constitutes valid contract generally is legal determination
for court).





[9]  Contrary to
Schleider=s perception, this statement does not constitute a
holding there could be no oral waiver of the July 1 maturity date.





[10]  In its prayer
for relief in this court, Beal Bank does not seek to recover any interest on
the note  accruing after the maturity
date and running through the date of judgment.